UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

         - v. -

FRANCISLEY DA SILVA,
JUAN TACURI,
ANTONIA PEREZ HERNANDEZ, and
RAMON PEREZ,

            Defendants.

- - - - - - - - - - - - - - - - - - - - X

**SEALED INDICTMENT**

:

S2 22 Cr. 622 (\_\_\_)

:

:

:

:

:

:

:

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### Relevant Individuals and Entities

1.    At all times relevant to this Indictment, Forcount, which later changed its names to Weltsys (together with Forcount, "Forcount"), was a purported cryptocurrency mining and trading company that promised to earn its victim-investors ("Victims") profits in exchange for their purchase of cryptocurrency-related investment products, such as cryptocurrency "plans" or "packs" that the company claimed to be trading on behalf of investors at a profit and cryptocurrency mining machine rentals (collectively, the "Investment

Products"). Multiple Victims resided in the Southern District of New York at the time they invested in Forcount.

2.   At all times relevant to this Indictment, FRANCISLEY DA SILVA, the defendant, acted as the primary operator and promoter of the Forcount Scheme. In or about 2017, SILVA founded Forcount and began marketing it to potential investors.

3.   Between at least in or about mid-2017 through in or about 2021, FRANCISLEY DA SILVA, the defendant, and others known and unknown, acted as promoters for Forcount (the "Promoters"). The primary role of Forcount's Promoters, including SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, was to explain and generate excitement about the Forcount compensation plan in order to recruit Victims into the Scheme, who would then be incentivized to recruit other Victims into the Scheme themselves.

### Overview of the Scheme

4.   From at least in or about mid-2017 through in or about 2021, Forcount's founder, FRANCISLEY DA SILVA, the defendant, together with certain Promoters, including JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, sought to induce Victims to invest in Forcount by

falsely claiming that Forcount invested Victims' funds in cryptocurrency mining and trading, and then shared the profits from those activities with Victims through passive, guaranteed returns on any Investment Product purchased (the "Forcount Scheme" or the "Scheme"). For example, the defendants falsely promised Victims, among other things, that Forcount's cryptocurrency trading and mining would generate guaranteed daily returns on Victims' investments, which would double within six months. In fact, Forcount was a Ponzi or pyramid scheme. Forcount did not trade or mine cryptocurrency. Instead, the defendants used Victim funds to pay other Victims, to further promote the Forcount Scheme to other Victims, and to make personal expenditures. Although some Victims received small payouts from Forcount, most Victims lost their entire investments, which were frequently in the thousands or even tens of thousands of dollars.

### Operation of the Scheme

5.    The Forcount Scheme operated principally through its Promoters. From in or about mid-2017 until in or about 2021, Forcount's Promoters, including FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, traveled throughout the United States and

internationally, where they hosted lavish Forcount promotional events and more intimate local presentations, chat groups, and videoconferences aimed at convincing Victims to purchase Forcount Investment Products and to act as Promoters for the Scheme themselves. A key theme of these presentations, which were aimed primarily at Spanish speakers throughout the United States, was that Forcount would allow its investors to achieve "financial freedom." Particularly at the larger promotional events, Promoters, including TACURI and PEREZ, often arrived in expensive cars and wore luxury clothing as a way of exhibiting their purportedly legitimate success through Forcount. In their presentations at the larger events, these Promoters often boasted about the amount of money they were making from their participation in Forcount, making grossly exaggerated claims, for example, that they made tens of thousands of dollars per week and that these earnings were possible for anyone who invested in the Scheme. The atmosphere of the events was festive and designed to generate excitement about Forcount. SILVA, TACURI, HERNANDEZ, and PEREZ attended one such event in New York, New York in or about September 2018.

6.    As Victims paid into the Scheme, they were typically placed under the Promoter who recruited them,

4

resulting in the Scheme ultimately resembling a pyramid, such as
the one depicted below. Forcount's Promoters, including
FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and
RAMON PEREZ, the defendants, and Victims generally referred to
the two legs extending down from each individual in the pyramid
as one's "binary."



7.    Victims purchased Investment Products from
Promoters, including FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA
PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, using cash,
checks, wire transfers, and actual cryptocurrency. After a
Victim made a purchase, the Promoter who recruited the Victim
into the Scheme typically provided the Victim with access to an
individual account on the Forcount online portal (the "Forcount
Online Portal"), where the Victim could log on and monitor his
or her investments and the purported gains on the investments,
and, at least in theory, withdraw earnings.

8.    In fact, as the defendants knew, there were no
real gains because there were no true investments. Promoters'

5

representations about Forcount engaging in cryptocurrency trading and mining on Victims' behalf, and their promises of guaranteed returns on investment, were false and misleading because Forcount engaged in no cryptocurrency trading or cryptocurrency mining. Instead, Forcount's promoters, including FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, used Victims' money to make payouts to other Victims, enrich themselves, and to finance further recruitment of Victims through, among other things, more promotional events where they would repeat the same misrepresentations about Forcount's Investment Products and Victims' potential earnings if they joined Forcount. At relevant times, SILVA, TACURI, and PEREZ withdrew tens of thousands of dollars in cash collected from Victims and spent Victims' funds on apparent promotional expenses for Forcount, such as event venues and travel; apparent personal expenses, such as real estate and luxury goods; and/or other expenses inconsistent with the operation of a legitimate cryptocurrency trading and mining business, such as bulk mobile phone purchases.

9.     As part of the Forcount Scheme, FRANCISLEY DA SILVA, JUAN TACURI, and RAMON PEREZ, the defendants, also worked to conceal the proceeds of the Forcount Scheme. In order to

6

launder Victims' payments by disguising the nature, source, and ownership of funds, SILVA, TACURI, and PEREZ set up bank accounts in the names of companies unrelated to Forcount, which they then used to receive Victims' payments. SILVA, TACURI, and PEREZ then transferred the funds in those accounts to other company bank accounts with no apparent connection to Forcount, or used those funds to make purchases and withdrawals, which then appeared to come from a source other than Forcount. For example:

a.  In or about 2017, SILVA opened a business bank account for International Club LLC ("International Club"), a Florida corporation registered by SILVA. Rather than using an account in the name of Forcount or otherwise outwardly associated with the Forcount Scheme, SILVA used the International Club LLC account to receive hundreds of thousands of dollars from Forcount Victims. During the same time period, SILVA wired hundreds of thousands of dollars traceable to payments from Victims from the International Club LLC account to a bank account held by Malaga E-Commerce LLC, a Florida corporation registered in the name of an associate of SILVA. Some of these wire transfers indicated in the wire instructions that they were for the purchase of mobile phones. The Malaga E-

7

Commerce LLC bank account was then used in turn to purchase hundreds of thousands of dollars of mobile phones. SILVA spent the remainder of the funds in the International Club LLC account on, among other things, apparent promotional and personal expenses, including luxury goods.

b.    In or about 2018, PEREZ and another co-conspirator ("CC-1") opened two business bank accounts for Pro Aqua Group LLC ("Pro Aqua Group"), a Florida corporation registered by PEREZ and CC-1 with no apparent connection to Forcount. The account opening documentation for one of these accounts claimed that Pro Aqua Group was a home remodeling business. There were no payments or expenditures in either account consistent with the operation of a home remodeling business. Instead, between in or about early 2018 and late 2018, when the accounts were closed, the accounts were funded predominantly by hundreds of thousands of dollars of payments from Victims. In or about June 2018, one of the Pro Aqua Group accounts sent approximately $90,000 to SILVA's International Club LLC account. Tens of thousands of dollars were also withdrawn in cash from both of the Pro Aqua Group accounts. PEREZ and CC-1 spent the remainder of the funds on, among other

8

things, apparent promotional and personal expenses, including luxury goods.

c.     In or about early 2019, TACURI, PEREZ, and another co-conspirator ("CC-2") opened a business bank account for RRP International Import LLC ("RRP"), a Florida corporation registered by TACURI, PEREZ, and CC-2 with no apparent connection to Forcount. Between in or about early 2019 and early 2020, when the account was closed, the account was funded predominantly by hundreds of thousands of dollars of cash deposits and wire transfers from Victims. Between in or about June and July 2019, the account transferred over $100,000 to two different title insurance companies for the apparent purchase of real estate. TACURI, PEREZ, and CC-2 spent the remainder of the funds in the RRP International Import LLC account on, among other things, apparent Forcount promotional and personal expenses, including luxury goods.

d.     In or about May 2020, TACURI opened a business bank account for JT Florida Cleaners LLC ("JT Florida Cleaners"), a Florida corporation registered by TACURI. Between in or about May 2020 and in or about September 2021, when the account was closed, TACURI transferred approximately $140,000 traceable to payments from Victims from TACURI's personal bank

account to the JT Florida Cleaners LLC bank account. An
additional approximately $41,000 deposited in the JT Florida
Cleaners LLC bank account was also funded by Victims. In or
about December 2020, TACURI then sent approximately $75,000 from
the JT Florida Cleaners LLC account to one of the title
insurance companies mentioned above. TACURI spent the remainder
on apparent promotional and personal expenses, including luxury
goods.

    e. In addition, to further conceal the nature
and source of the proceeds, SILVA, TACURI, HERNANDEZ, and PEREZ
instructed Promoters and Victims not to indicate on checks or in
wire transfer instructions that payments were for
cryptocurrency, but rather to tell banks that the funds were for
"software."

    10. At least as early as in or about April 2018,
Victims began complaining to Promoters, including FRANCISLEY DA
SILVA, JUAN TACURI, and RAMON PEREZ, the defendants, about,
among other things, having difficulty withdrawing money from the
Forcount Online Portal and their accounts not reflecting the
earnings they believed they were entitled to under the Forcount
compensation plan. ANTONIA PEREZ HERNANDEZ, the defendant, began
receiving similar complaints at least as early as in or about

10

January 2019. SILVA, TACURI, HERNANDEZ, and PEREZ generally responded to Victims' complaints with excuses about technical difficulties, alleged hacks, and other mishaps that would delay withdrawal of Victims' funds, or gave Victims false assurances that Forcount would eventually pay Victims what they were owed. Despite these complaints, SILVA, TACURI, HERNANDEZ, and PEREZ continued to promote Forcount and/or to accept Victims' investments.

11.   In or about fall 2019, as more and more Victims began to complain about not being able to withdraw their purported earnings from the Forcount Online Portal, Forcount's Promoters, including FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, began heavily promoting Investment Products denoted in Forcount's proprietary crypto-token known as "Mindexcoin," whereas previously the Investment Products were denominated principally in the cryptocurrencies Ether, Litecoin, and Dash. Forcount's Promoters led Victims to believe that Mindexcoin, which Forcount initially offered for sale for approximately one cent a piece, would eventually reach a value of approximately $1 or more once it became accepted as a means of payment for goods and services. In reality, Mindexcoin were essentially worthless and certain

11

Forcount promoters were arbitraging Mindexcoin by buying it for significantly less on external exchanges and then reselling it at a large mark-up to Victims.

12. As Victims faced mounting difficulties withdrawing their funds from Forcount, a group of Promoters decided to confront FRANCISLEY DA SILVA, the defendant, and other senior Promoters, such as JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, at a promotional event held in Chicago, Illinois in or about January 2020. At a certain point during the event, which SILVA and TACURI attended remotely via videoconference, a Promoter ("Promoter-1") stood up and began complaining about withdrawal issues Promoter-1 was aware of from Victims who had invested in the Forcount Scheme through Promoter-1. In response, HERNANDEZ and PEREZ attempted to get hotel security to eject Promoter-1 from the event. After this public confrontation, SILVA, TACURI, HERNANDEZ, and PEREZ continued to promote the Forcount Scheme and accept Victims' investments.

13. In or about 2021, the Forcount Scheme stopped making payments to Victims, and its chief promoters, including FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, stopped promoting the Forcount

Scheme and, in some instances, stopped responding to Victims
altogether. Most Victims lost their entire investments.

14.   On or about June 27, 2022, law enforcement
officers with United States Customs and Border Protection
stopped ANTONIA PEREZ HERNANDEZ, the defendant, at a Florida
airport as she was returning from Mexico. Special Agents with
the United States Department of Homeland Security, Homeland
Security Investigations, conducted an interview of HERNANDEZ
remotely from the Southern District of New York. During the
interview, HERNANDEZ falsely denied being a Forcount promoter,
recruiting investors, and taking money from investors, and
denied knowing JUAN TACURI or RAMON PEREZ, the defendants,
beyond seeing them from afar at Forcount events. HERNANDEZ also
falsely claimed, in substance and in part, that she had had no
involvement with any cryptocurrency-related business since in or
about August 2017 and had no understanding of the term "binary."

## STATUTORY ALLEGATIONS

15.   From at least in or about mid-2017 through in or
about 2021, in the Southern District of New York and elsewhere,
FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and
RAMON PEREZ, the defendants, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and

13

agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

16.   It was a part and an object of the conspiracy that FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SILVA, TACURI, HERNANDEZ, and PEREZ, agreed with one another and others to engage in a scheme to defraud Victims by falsely representing, including through, among other things, WhatsApp messages and online video conferences, that Forcount was engaged in cryptocurrency trading and minding on behalf of Victims, and that Victims would share in the profits of this fictitious activity through guaranteed passive income, thereby inducing Victims to make payments to the defendants and others by various means including through interstate wire transfers.

(Title 18, United States Code, Section 1349.)

14

### COUNT TWO
(Wire Fraud)

The Grand Jury further charges:

17.   The allegations contained in paragraphs 1 through 14 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

18.   From in or about mid-2017, through at least in or about 2021, in the Southern District of New York and elsewhere, FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SILVA, TACURI, HERNANDEZ, and PEREZ engaged in a scheme to make false and fraudulent representations to Victims, including through, among other things, WhatsApp messages and online video conferences, that Forcount was engaged in cryptocurrency trading and minding on behalf of Victims, and that Victims would share in the profits of this fictitious activity through guaranteed passive

15

income, thereby inducing Victims to make payments to the
defendants and others by various means including through
interstate wire transfers.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT THREE**
(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through
14 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

20. From at least in or about mid-2017 through in or
about 2021, in the Southern District of New York and elsewhere,
FRANCISLEY DA SILVA, JUAN TACURI, and RAMON PEREZ, the
defendants, and others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree together
and with each other to commit money laundering, in violation of
Title 18, United States Code, Section 1956(a)(1)(B)(i).

21. It was a part and an object of the conspiracy
that FRANCISLEY DA SILVA, JUAN TACURI, and RAMON PEREZ, the
defendants, and others known and unknown, knowing that the
property involved in a financial transaction represents the
proceeds of some form of unlawful activity, would and did
conduct and attempt to conduct such a financial transaction,

16

which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction is designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit SILVA, TACURI, and PEREZ agreed with one another to conceal the funds they received from Forcount Victims by encouraging Victims to misrepresent the nature of those funds on checks and in wire transfers, opening bank accounts in the names of shell companies with no apparent connection to Forcount to receive Victims' funds, and then transferring the funds among their various bank accounts and then using the funds to purchase, among other things, real estate and mobile phone in bulk.

(Title 18, United States Code, Section 1956(h).)

17

## COUNT FOUR
(False Statements)

The Grand Jury further charges:

22.     The allegations contained in paragraphs 1 through 14 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

23.     On or about June 27, 2022, in the Southern District of New York and elsewhere, ANTONIA PEREZ HERNANDEZ, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made false, fictitious, and fraudulent statements and representations, to wit, when interviewed by Special Agents with the United States Department of Homeland Security, Homeland Security Investigations, HERNANDEZ falsely stated that: (1) she never been a Forcount promoter, recruited Victims, or taken money from Victims; (2) she did not know JUAN TACURI or RAMON PEREZ, the defendants, beyond seeing them from afar at Forcount events; (3) she had had no involvement with any cryptocurrency-related business since in or about August 2017; and (4) she had no understanding of the term "binary."

(Title 18, United States Code, Section 1001).

18

## FORFEITURE ALLEGATIONS

24.  As a result of committing the offenses alleged in Counts One and Two of this Indictment, FRANCISLEY DA SILVA, JUAN TACURI, ANTONIA PEREZ HERNANDEZ, and RAMON PEREZ, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the following specific property:

a.  All right, title, and interest of the defendants in the real property located at 2946 Florida Bay Drive, Orlando, Florida 32824, Lot 35, Estates at Sawgrass Plantation; and

b.  All right, title, and interest of the defendants in the real property located at 2607 Raccoon Run Lane, Orlando, Florida 32837, Hunters Creek Tract, 430B PH 3 30/136, Lot 162 (a and b, collectively, the "Specific Property").

25.  As a result of committing the offense alleged in

19

Count Three of this Indictment, FRANCISLEY DA SILVA, JUAN TACURI, and RAMON PEREZ, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a) (1), any and all property, real or personal, involved in the offense alleged in Count Three of this Indictment, and any property traceable to such property, including the Specific Property.

## Substitute Assets Provision

26. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), and Title 28, United States

20

Code, Section 2461(c), to seek forfeiture of any other property

of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981 & 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON (DFP)

DAMIAN WILLIAMS
United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

FRANCISLEY DA SILVA, JUAN TACURI,
ANTONIA PEREZ HERNANDEZ, and
RAMON PEREZ,

Defendants.

SEALED INDICTMENT

S2 22 Cr. 622 (___)

(18 U.S.C. §§ 1001, 1343, 1349,
1956(h), and 2.)

_____ (DFP)
Foreperson

DAMIAN WILLIAMS
United States Attorney.

12-6-22 - S-2 Superseding Indictment Filed. One Arrest Warrant issued

Valerie Figueredo
U.S.M.S